UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Humberto Victornio, Jr. and Rory Grundhoffer,
as Co-Trustees for the next-of-kin of Diana
Balderas,

                    Plaintiffs,                              Case No. 18-226 (JNE/DTS)

        vs.                                                   AMENDED COMPLAINT

Shawn Hayes, acting in his individual capacity as a           JURY TRIAL DEMANDED
Waseca County correctional officer, Dan Mocol,                UNDER FRCP 38(b)
acting in his individual capacity as a Waseca County
correctional officer, John Does 1-2, acting in their
individual capacities as a Waseca County correctional
officers, and Waseca County,

                    Defendants.

        For their Amended Complaint, Humberto Victorino, Jr. and Rory Grundhoffer, as

co-trustees for the next-of-kin of Diana Balderas, state and allege as follows:

        1.      This is an action for money damages for the wrongful death of Diana Balderas

("Balderas") that occurred on October 30, 2016 and resulted from the deliberate indifference

of Waseca County and the individual Defendants who are correctional employees of Waseca

County acting in their individual capacities at the Waseca County Jail on October 13, 2016.

        2.      The deliberate indifference of Waseca County and the individual Defendants

proximately caused Balderas' death, thereby violating her well-settled federal civil rights

while acting under the color of state law.

3.     This cause of action arises out of 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the Constitution. State law claims are also asserted under Minnesota statutory and common law.

4.     Humberto Victorino, Jr. and Rory Grundhoffer ("Plaintiffs") were appointed Co-Trustees for the Next-of-Kin of Balderas on April 27, 2017 by Hennepin County District Court Judge Amy Dawson. Humberto Victorino, Jr. is one of Balderas' sons and Rory Grundhoffer is the parent and natural guardian of two of Balderas' children who are both minors. A copy of that Order is attached hereto as Exhibit A.

5.     Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Eighth and Fourteenth Amendments to the Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this cause of action. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

6.     Balderas was at all times material herein a citizen of the United States and resident of Waseca, Minnesota. She was born on October 29, 1961, making her 55 years old at the time of her death. She suffered from mental illness, including anxiety and depression, as well as substance abuse.

7.     Defendant Waseca County is a "public corporation," which can be sued under Minn. Stat. § 373.01, subd. 1(a)(1). Waseca County is, and at all times material herein was, a political entity charged with control and supervision of all personnel of the Waseca County Jail.

8.     Upon information and belief, Defendant Shawn Hayes ("Hayes") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a correctional officer at the Waseca County Jail. Hayes is sued in his individual capacity.

9.     Upon information and belief, Defendant Dan Mocol ("Mocol") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a correctional officer at the Waseca County Jail. Mocol is sued in his individual capacity.

10.     Upon information and belief, Defendant John Does 1-2 were at all times material herein citizens of the United States, residents of the State of Minnesota, and acting under color of state law as correctional officers of the Waseca County Jail. Defendant John Does 1-2 are sued in their individual capacity.

## FACTUAL SUMMARY

11.     Balderas was charged with a Second Degree Controlled Substance offense stemming from an incident on June 19, 2015.

12.     On August 14, 2015, Balderas was brought to the Waseca County Jail and transferred to Steele County for housing. She was released on August 16, 2015 on bail and various conditions, including that she was to submit to random chemical testing.

13.     On January 28, 2016, Balderas entered a guilty plea to the Second Degree Controlled Substance offense.

14.     On Balderas' Petition to Enter Plea of Guilty regarding the Controlled Substance offense, which was filed in Waseca County on January 28, 2016, it was noted she

had: 1) talked with or been treated by a psychiatrist or other person for a nervous or mental condition, specifically depression and anxiety; and 2) she had recently been taking pills or medication to help her think clearly.

15.     Further, in the January 29, 2016 Pre-Sentence Investigation for Balderas, Waseca Corrections Agent BethAnn Wolff noted that Balderas: 1) used pain medication for her back to sleep; 2) had been using marijuana since age 35; 3) had a history of anxiety and depression; 4) had been prescribed Trazadone (a sedative and antidepressant) for the past 25 years; 5) exhibited physical symptoms of being out of it and spending a lot of time sleeping on the couch; 6) combined medication with marijuana; and 7) was more coherent on some days than others.

16.     Ms. Wolff recommended probation for Balderas.

17.     Balderas was placed on supervised probation for three years with various conditions, including but not limited to: 1) random testing; 2) complete a psychological evaluation/treatment within 45 days and follow recommendations; 3) complete a chemical dependency evaluation/treatment within 30 days and follow recommendations; and 4) cognitive skill training.

18.     According to a July 29, 2016 Probation Violation Report ("the Report") by Ms. Wolff, Balderas failed three terms of her probation by testing positive for marijuana, failing to follow through with the chemical dependency evaluation recommendation for inpatient treatment and missing an appointment.

4

19.     The July 29, 2016 Report by Ms. Wolff was also signed by a District Supervisor. The Report included the following information in the "comments/adjustments" section:

> [Balderas] has a history of working with Human Services and mental health professionals and failing to address her chemical use issues. Minnesota Prairie Alliance is supportive of the offender completing Inpatient treatment but she is also indicating to her Caseworker…that she is refusing to participate…The chemical use issues need to be addressed for herself and her children. The offender did complete a Mental Health Evaluation on April 25, 2016 with River View Clinic. It was recommended the offender consult with a psychiatrist for medication evaluation and set up individual therapy to help manage her current mental health. The offender is stating ideations of suicide to professionals…

20.     The recommendation in the Report requested Balderas "be given the opportunity to enroll in and attend inpatient treatment and follow aftercare."

21.     On September 6, 2016, Balderas was remanded into the custody of Waseca County Jail and was to be released to enter an in-patient treatment and complete a CD assessment.

22.     Because Waseca County Jail does not house women for long periods of time, Balderas was transferred to Steele County Jail.

23.     Medical records from Steel County Jail note that from September 6 to September 15, 2016, Balderas was administered Paroxetine, which is a selective serotonin reuptake inhibitor that treats depression and anxiety. Further, Balderas was administered Hydroxyzine, which is an antihistamine that also treats anxiety.

24.     On September 9, 2016, per Steele County records, Balderas requested to see a mental health provider and reported some chest pain and numbness in her left arm believed to be from anxiety.

25.     A Steele County nurse referred Balderas to mental health.

26.     Balderas was seen by Steele County mental health on September 9, 2016.

27.     It was noted on the September 9, 2016 Mental Health Services Clinical Contact form from Steele County that Balderas "report[s] hx of dealing with 'anxiety and depression'" and "Pt spent session discussing stressors and her desire for tx."

28.     Balderas' diagnoses on the Steele County Mental Health Contact form was "Major Depression and Generalized Anxiety Disorder."

29.     A September 14, 2016 Steele County Mental Health Services Clinical Contact form noted that staff referred Balderas to mental health because of "behavioral abnormalities over the weekend (not coming out of cell)."

30.     Upon review by Steele County mental health, Balderas "presented in a down mood" and "verbalized concerns of feeling 'depressed.'" Further, she was disheveled and slowed.

31.     On September 15, 2016, nurses were called to Balderas' pod because she was hyperventilating, stating she could not breathe, sweating and talking anxiously.

32.     Balderas was transported by ambulance to the Emergency Room at the Owatonna Hospital.

33.     Waseca County was alerted that Balderas was taken from Steele County Jail to the hospital.

34.     Based on her admittance to the hospital and the pending availability of bed space for in-patient treatment, the Waseca County Sheriff's Office requested that Balderas

be released from their custody so they did not have to have a deputy sit with her at the hospital. This request was granted on September 15, 2016.

35.     Balderas later appeared in front of a Waseca County Judge at the Waseca County Courthouse on the afternoon of October 13, 2016 regarding the alleged probation violations.

36.     The transcript of the October 13, 2016 hearing reflects discussions regarding Balderas': 1) anxiety; 2) drug use; 3) September 2016 hospitalization for anxiety; 4) autistic son; 5) parenting troubles; 6) mental health needs; and 7) treatment needs for both mental health and chemical dependency.

37.     As a result of the hearing, Balderas was ordered to complete treatment, aftercare and psychiatric evaluation/treatment. Further, she was to follow recommendations regarding medications and prescription amounts.

38.     Balderas was again remanded to Waseca County Sheriff until a treatment bed was available. A copy of the Order, which was signed on October 13, 2016, is attached hereto as Exhibit B.

39.     During the hearing, the Judge explained to Balderas that if she was in an inpatient treatment program and needed to see her psychiatrist, she would be able to do so.

40.     In accordance with the Judge's Order, Balderas was taken into custody by the Waseca County Sheriff's Office.

41.     After the hearing, at approximately 1:55 p.m. on October 13, 2016, Balderas was brought from the Waseca County Courthouse to the Waseca County Jail by Waseca County Deputy Jay Dulas.

42.     The Waseca County Jail is located just West of the Courthouse in the Waseca County Security Building.

43.     Upon information and belief, during the transport, Balderas and her autistic, minor son saw each other.  Balderas was in handcuffs at the time and it was a difficult and emotional encounter.

44.     According to Waseca County Sheriff Office reports, Balderas was brought into a secure area of the jail and into a secure "attorney room" at the Waseca County Jail. This is confirmed by the surveillance video.

45.     After spending over 15 minutes alone in the secured attorney roomBalderas was taken into a Booking Room across the hall.

46.     According to Defendant Hayes and Defendant Mocol, Balderas' booking was "completed."

47.     Balderas spent only 4 minutes in the Booking Room.

48.     There is no evidence that the full booking process, which includes elements essential to prisoner safety and security, to wit: medical and mental health screening, was begun or completed.

49.     During the 4 minutes Balderas spent in the booking room, Defendant Mocol took her photograph.  Further, Balderas was allowed to make calls regarding her psychiatric medications and she discussed the ramifications of not taking her medications with Defendant Mocol and Defendant Hayes, particularly the events that transpired at Steele County in September 2016.

50.     Upon information and belief, the "booking process" was performed by Defendant Hayes and overseen by Defendant Mocol because October 13, 2016 was Defendant Hayes' fourth day on the job as a Waseca County Jail correctional officer.

51.     Balderas' "booking" was Defendant Hayes' first time booking an inmate.

52.     No medical or mental health screenings were begun or completed for Balderas despite Defendants' knowledge that: 1) Balderas was taking psychiatric medication; and 2) that Balderas was remanded into custody until a treatment bed opened up.

53.     Defendants had actual knowledge of Balderas' severe mental health needs.

54.     Only 4 minutes after taking Balderas into the booking room for processing, she was taken to the Game/Recreation Room, which consists of a common area, shower, toilet, sink, phone, table, foosball table and shelf with hooks.

55.     Balderas was left alone in the Game/Recreation room.

56.     Balderas was not locked into any cell.

57.     Balderas had the ability to move freely within the Game/Recreation Room.

58.     A video surveillance camera monitored the Game Room.

59.     The surveillance video streamed footage to monitors in the Booking Room where Defendant Mocol and Defendant Hayes were located for the majority of the time Balderas was left alone in the game room.

60.     Defendant Hayes failed to monitor the footage of the Game/Recreation Room where Balderas was left.

61.     Defendant Mocol "looked up once or twice" at the monitors but was otherwise occupied with paperwork and was in "in the middle of about 10 things…"

62.     Defendant Mocol also made calls regarding where Balderas would be transferred.

63.     During a call to the Steele County Jail, personnel informed Defendant Mocol that Steele County would not accept Balderas as she had been taken to the hospital on a couple of occasions the last time she was housed there at Waseca County's request. It was eventually determined that Balderas would be transported to Blue Earth County.

64.     Upon learning this information, Defendant Mocol had increased knowledge regarding Balderas' serious medical needs and, upon information and belief, Defendant Mocol relayed this information to Defendant Hayes.

65.     The surveillance video of the Game/Recreation Room shows some of Balderas' movements during this time.

66.     The pertinent portion of the Game/Recreation Room video begins at 2:15:30 when Balderas enters the room.

67.     The Game/Recreation Room video then shows Balderas' movements for approximately 3 minutes – from 2:15:30 to 2:18:26, as time stamped on the video.

68.     During those three minutes, Balderas can be seen inspecting the shower door, attempting to open the shower door, using the bathroom, playing with a string-like object with her hands, and staring at the book shelf with towel hooks.

69.     This portion of the video ends at 2:18:26 with Balderas staring at the shelf with hooks and, upon information and belief, with a shoelace in her hand.

70.     The video provided to Plaintiffs skips portions of time, including the most important 31 ½ minutes – from 2:18:26 to 2:50:02.

10

71.     Within the missing 31 ½ minutes Balderas performed the physical acts and movements necessary to hang herself from a towel hook with a shoelace.

72.     Defendants claim that there was not enough movement within the Game/Recreation Room for the motion sensors to remain activated throughout those 31 ½ minutes.

73.     The Game Room video is next activated over 31 minutes later at 2:50:02. At that time, there is no movement in the Game/Recreation Room and Balderas can be seen hanging by a shoelace from the towel hook closest to where she was last seen at 2:18:26.

74.     Upon information and belief, the towel hook was approximately 3-4 feet off the ground.

75.     Approximately 7 seconds after the video re-activated and nearly 35 minutes after Balderas was taken into and left alone in the Game/Recreation Room, Defendant Hayes entered the Game Room and found her hanging.

76.     At no time during those 35 minutes did the Defendants or any Waseca County Jail personnel perform any well-being check on Balderas.

77.     Defendant Hayes only entered the Game/Recreation Room at 2:50:09 because the officer who was going to transport Balderas to Blue Earth arrived at the jail and requested Hayes get Balderas ready.

78.     According to the Minnesota Department of Corrections ("DOC") records Balderas was hanging for 30-60 minutes before she was found.

79.     Upon finding Balderas, Defendant Hayes returned to the Booking Room to get Defendant Mocol and other officers to assist with Balderas.

80.     Balderas had vomited.

81.     Balderas was then motionless, unresponsive and had no pulse.

82.     One Deputy loosened and eventually cut the shoelace off of Balderas' neck.

83.     CPR was initiated and was continued until paramedics arrived.

84.     Balderas was asystole when paramedics took over her care.

85.     Balderas had a thin red line on her mid neck from the lateral right side around to the lateral left side.

86.     Life saving measures were continued by the paramedics.  An IV was started with two rounds of epinephrine administered to Balderas.  She was intubated and cardiac cooling was initiated.

87.     A pulse was detected approximately 4-6 minutes into rescue attempts on Balderas.

88.     Balderas was transported by ambulance to the Waseca Airport.  She was then airlifted to North Memorial Medical Center in Robbinsdale, Minnesota.

89.     No movement, other than occasional swallowing motions, was observed during her transport.

90.     Balderas' diagnosis upon admission to North Memorial was cardiac arrest. She remained unresponsive, on a ventilator and myoclonus was observed.

91.     Balderas' providers were very concerned she had suffered a significant neurologic injury.  Her prognosis was noted to be very poor.

92.     Neurology consulted on Balderas' case and reviewed her head CT. She was diagnosed with severe anoxic brain injury. Neurology did not see hope for any meaningful neurologic recovery for Balderas.

93.     On October 30, 2016, Balderas was extubated. She died four hours later.

94.     According to the Hennepin County Medical Examiner's cause of death hierarchy for Balderas, the immediate cause of her death was complications of anoxic encephalopathy due to or as a consequence of resuscitated cardiopulmonary arrest and ligature hanging. The manner of death was suicide.

95.     A history of anxiety and depression were other significant conditions noted by the Hennepin County Medical Examiner.

96.     The DOC investigated Balderas' suicide at the Waseca County Jail. The report is attached hereto as Exhibit C.

97.     The DOC concluded that "there [was] a violation of the Chapter 2911 rules as they pertain to this incident. Staff did not complete a well-being check at least once every 30 minutes as per the rule."

98.     Defendants also failed to meet the booking requirements.

99.     Defendants failed to assess Balderas' medical and mental health status upon intake to the Jail on October 13, 2016

100.    Despite their knowledge of Balderas' serious mental health needs, no initial custody assessment was performed upon Balderas' intake to the Jail on October 13, 2016.

101.    No medical, mental health or addiction questionnaire was performed upon Balderas' intake.

102.    No steps were taken to assess Balderas' suicidal tendencies.

103.    No steps were taken to prevent Balderas' ideations, thoughts and/or plan to commit suicide.

104.    Defendants Hayes and Mocol spent approximately 4 minutes with Balderas from the time Deputy Dulas brought her to the secured area of the Jail to the time she was left alone in the Game/Recreation Room.

105.    During that time Defendants gained actual knowledge of Balderas' serious mental health issues.

106.    Defendants Hayes and Mocol made decisions to let Balderas sit completely unchecked without even taking the most simple and basic step of removing her shoelaces for inmate safety.

107.    Their plan – to leave Balderas unattended until whenever transport arrived – evidences deliberate indifference to her serious medical needs.

108.    Defendants failed to take any precautions to ensure Balderas would not have the means and opportunity to commit suicide during her time at the Waseca County Jail on October 13, 2016.

109.    In the Game/Recreation Room, Balderas had unfettered access to a large general area, all of which should have been obvious to Defendant Hayes and Defendant Mocol, any other correctional officers assigned to monitor the video that feeds from that area of the Jail to the monitors in the Booking Room and Defendant John Does 1-2 and any other officers assigned to perform well-being checks on the area.

14

110. The Game/Recreation Room is associated with having increased freedom and privileges and is a location where there are numerous objects that could be used to commit suicide, i.e., window bars, towel hooks, a telephone cord. It was one of the worst places Defendants could have chosen for an area to detain Balderas.

111. Balderas was left alone in this area and, from the Jail surveillance video and the DOC findings, was not checked prior to being found hanging from a towel hook approximately 35 minutes after she entered the Game/Recreation Room.

112. The surveillance video feed from the Game/Recreation Room was not properly monitored by Defendants. The Defendants failed to monitor the area in which movements should have been expected for the 31 ½ minutes in which there was no movement, if we are to believe the tape, or worse if the now missing video actually showed the movements necessary to complete the suicide.

113. The Game/Recreation Room was not properly checked by Defendants.

114. Defendants knew that Balderas had a serious and obvious medical need in the form of severe mental illness upon her arrival and processing at the Waseca County Jail on October 13, 2016.

115. Defendants knew or should have known had any intake assessment been performed that Balderas had previously received treatment for severe mental illness.

116. Defendants knew or should have known had any intake assessment been performed that Balderas had previously received treatment for chemical dependency.

117. Defendants knew or should have known had any intake assessment been performed that Balderas had been prescribed medication for depression and anxiety.

118. Defendants knew or should have known had any intake assessment been performed that Balderas must have had ideations, thoughts and/or plans of suicide upon her incarceration at the Waseca County Jail on October 13, 2016.

119. Defendants had notice of red flags showing that Balderas had serious medical needs, but instead of taking any steps to assess her current condition, they made decisions that provided zero safeguards to prevent self-harm.

120. Balderas incurred special medical damages prior to her death, including but not limited to EMS and ambulance charges, medical air transport charges, and medical bills from North Memorial and physicians associated therewith.

121. Balderas suffered a loss of economic opportunity.

122. Balderas suffered pain and suffering from the time her serious and obvious medical condition was ignored until the time of her death.

123. Balderas suffered the loss of the enjoyment of her life.

124. Plaintiffs are entitled to recover these damages for Balderas.

**COUNT ONE**
**42 U.S.C. § 1983**
**EIGHTH AND FOURTEEN AMENDMENT VIOLATIONS**
*Plaintiffs v. Defendant Shawn Hayes*

125. Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

126. Severe mental illness and suicidal ideation are serious medical needs.

16

127.     Defendant Shawn Hayes had a duty to provide for the safety and general well-being of Balderas, including protecting her from herself, as an inmate at the Waseca County Jail.

128.     Defendant Shawn Hayes, under the color of state law, acted with deliberate indifference to Balderas' life-threatening medical needs and her serious risk of suicide during her confinement at the Waseca County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

129.     Defendant Shawn Hayes, under the color of state law, knew of and disregarded an obvious and serious risk to Balderas' health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

130.     Defendant Shawn Hayes subjected Balderas to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Balderas' rights would be violated by Defendant Hayes' actions.

131.     Balderas died as a direct and proximate result of Defendant Shawn Hayes' acts and omissions, and Plaintiffs were thereby damaged in the form describe above and in an amount as yet to be determined.

132.     Punitive damages are available against Defendant Shawn Hayes as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

133.     Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT TWO
## 42 U.S.C. § 1983
## EIGHTH AND FOURTEEN AMENDMENT VIOLATIONS
### *Plaintiffs v. Defendant Dan Mocol*

134.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

135.    Severe mental illness and suicidal ideation are serious medical needs.

136.    Defendant Dan Mocol had a duty to provide for the safety and general well-being of Balderas, including protecting her from herself, as an inmate at the Waseca County Jail.

137.    Defendant Dan Mocol, under the color of state law, acted with deliberate indifference to Balderas' life-threatening medical needs and her serious risk of suicide during her confinement at the Waseca County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

138.    Defendant Dan Mocol, under the color of state law, knew of and disregarded an obvious and serious risk to Balderas' health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

139.    Defendant Dan Mocol subjected Balderas to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Balderas' rights would be violated by Defendant Mocol's actions.

140.     Balderas died as a direct and proximate result of Defendant Dan Mocol's acts and omissions, and Plaintiffs were thereby damaged in the form describe above and in an amount as yet to be determined.

141.     Punitive damages are available against Defendant Dan Mocol as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

142.     Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT THREE
### 42 U.S.C. § 1983
## EIGHTH AND FOURTEEN AMENDMENT VIOLATIONS
### *Plaintiffs v. Defendant John Does 1-2*

143.     Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

144.     Severe mental illness and suicidal ideation are serious medical needs.

145.     Defendant John Does 1-2 had a duty to provide for the safety and general well-being of Balderas, including protecting her from herself, as an inmate at the Waseca County Jail.

146.     Defendant John Does 1-2 failed to complete well-being checks and/or monitoring of the Game/Recreation Room in accordance with Chapter 2911 rules and the policies and procedures of Waseca County.

147.     Defendant John Does 1-2, under the color of state law, acted with deliberate indifference to Balderas' life-threatening medical needs and her serious risk of suicide during

19

her confinement at the Waseca County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

148.    Defendant John Does 1-2, under the color of state law, knew of and disregarded an obvious and serious risk to Balderas' health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

149.    Defendant John Does 1-2 subjected Balderas to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Balderas' rights would be violated by the actions of Defendant John Does 1-2.

150.    Balderas died as a direct and proximate result of the acts and omissions of Defendant John Does 1-2 and Plaintiffs were thereby damaged in the form described above and in an amount as yet to be determined.

151.    Punitive damages are available against Defendant John Does 1-2 as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

152.    Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FOUR
## FAILURE TO TRAIN UNDER
## CITY OF CANTON V. HARRIS
### *Plaintiffs v. Waseca County*

153.     Plaintiffs reallege and incorporate by reference herein each and every

allegation contained in each paragraph above as if fully set forth herein.

154.     Defendant Waseca County, with deliberate indifference to inmates at the

Waseca County Jail, failed to properly train correctional staff and failed to adopt, implement

or require adherence to appropriate policies to provide timely and appropriate care for

inmates with serious mental illnesses.

155.     Defendant Waseca County, by such conduct, demonstrated deliberate

indifference and a protracted failure to care for the safety of Balderas who had an obvious

and serious medical need in the form of a severe mental health crisis.

156.     Balderas' wrongful death and the violation of her civil rights was directly and

proximately caused by the aforementioned acts and omissions and by Waseca County's

customs, patterns, and/or practices, and Waseca County is thereby liable in an amount as yet

to be determined.

157.     Plaintiffs are entitled to recovery of their costs, including reasonable attorneys'

fees, under 42 U.S.C. § 1988.

## COUNT FIVE
## STATE LAW NEGLIGENCE
## AND WRONGFUL DEATH
### *Plaintiffs v. All Defendants*

158.     Plaintiffs reallege and incorporate by reference herein each and every

allegation contained in each paragraph above as if fully set forth herein.

159. The correctional officer defendants owed Balderas a duty to provide for her safety and well-being.

160. It is foreseeable that inmates who are not properly booked, questioned and supervised, such as Balderas, pose a danger to themselves, including a risk of harming themselves or others.

161. The booking, intake questioning and supervision requirements impose ministerial duties on the above-named correctional officer defendants.

162. The correctional officer defendants breached these duties when they failed to properly book, process, question, supervise and conduct proper, timely well-being checks on Balderas. All this occurred despite their knowledge of her serious mental health needs.

163. Waseca County is vicariously liable for the acts and omissions of defendants Mocol, Graves, Doe 1 and Doe 2 because they were acting in the course and scope of their duties as Waseca County employees or agents.

164. The negligent acts and omissions described in Count Five are wrongful acts and omissions for purposes of Minn. Stat. § 573.02, Subd. 1.

165. These wrongful acts and omissions directly and proximately caused Balderas's death.

166. As a direct and proximate result of defendants' tortious conduct, Balderas's next-of-kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection and support in an amount as yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Humberto Victorino, Jr. and Rory Grundhoffer, as co-trustees for the next-of-kin of Diana Balderas pray for judgment against Defendants as follows:

1. That this Court find that the Defendants committed acts and omissions constituting violations of the Eighth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983;

2. As to Count One, a money judgment against Defendant Shawn Hayes for compensatory and punitive damages in an amount to be determined by a jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

3. As to Count Two, a money judgment against Defendant Dan Mocol for compensatory and punitive damages in an amount to be determined by a jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

4. As to Count Three, a money judgment against Defendant John Does 1-2 for compensatory and punitive damages in an amount to be determined by a jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

5. As to Count Four, a money judgment against Waseca County for compensatory damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

6. As to Count Five, a money judgment against defendants Shawn Hayes, Dan Mocol and John Does 1-2, jointly and severally, for compensatory damages in an amount to be determined by the jury, together with costs and prejudgment interest;

7.    For an order mandating changes in the policies and procedures of the Waseca County Jail requiring, among other things, policy/training measures in the recognition of serious mental illness and suicidal ideation in correctional facilities and in the prevention of suicide among inmates in correctional facilities; and

8.    For such other and further relief as this Court may deem just and equitable.


                                    GASKINS BENNETT & BIRRELL LLP

Date: October 16, 2018             s/Andrew J. Noel
                                    Robert Bennett, #6713
                                    Andrew J. Noel, #322118
                                    Kathryn H. Bennett, #0392087
                                    333 South Seventh Street, Suite 3000
                                    Minneapolis, MN 55402
                                    Telephone: 612-333-9500
                                    rbennett@gaskinsbennett.com
                                    anoel@gaskinsbennett.com
                                    kbenentt@gaskinsbennett.com

                                    AND

                                    SIEBEN CAREY LTD.

Date: October 16, 2018             s/Jeffrey M. Montpetit
                                    Jeffrey M. Montpetit, #0291249
                                    901 Marquette Avenue, #500
                                    Minneapolis, MN 55402
                                    Telephone: 612-333-4500
                                    jeffrey.montpetit@knowyourrights.com

                                    Attorneys for Plaintiffs